UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

THE SURFRIDER FOUNDATION,
CITY OF CHICAGO,

    Plaintiffs,

    v.

UNITED STATES STEEL
CORPORATION,

    Defendant.

Case No. 2:18-CV-20 JD

**Consolidated with**

Case No. 2:18-CV-33 JD

### <u>OPINION AND ORDER</u>

The defendant, United States Steel Corporation, has moved for dismissal of the Plaintiffs'

complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE

56.) Also pending before the Court is the Plaintiffs' Motion for Leave to File an Amended

Complaint (DE 50), and several motions by both parties for the Court to take judicial notice of

several public records related to this case (DE 54, 60, 62).

For the following reasons, the motions for judicial notice will be granted. Further, the

motion to dismiss will be granted, and the motion for leave to file an amended complaint will be

dismissed as moot.

### A. Background

The story of this case begins in 2017 at U.S. Steel's Midwest Plant in Portage, Indiana. In

April of that year, the plant released a dangerous amount of hexavalent chromium into Lake

Michigan. This environmental incident resulted in a series of lawsuits against U.S. Steel,

including this one. The full details of this incident and subsequent litigation are fully summarized

in the Court's most recent order in the companion case of *United States v. United States Steel Corporation.* 2021 WL 3888452 (N.D. Ind. Aug. 30, 2021).[1]

The short version of the story regarding this particular lawsuit is that after the 2017 incident at the Midwest Plant, the instant plaintiffs, The Surfrider Foundation and the City of Chicago (collectively "The Plaintiffs"), filed suit against U.S. Steel in January 2018 for violating the Clean Water Act pursuant to the Act's "citizen suit" provisions. The United States and the State of Indiana filed their own case against U.S. Steel in April 2018 ("The Enforcement Case").[2] Surfrider and Chicago then agreed to stay this case while the Enforcement Case proceeded, and later joined that case as Intervenor-Plaintiffs. The Enforcement Case ultimately concluded with a Revised Consent Decree which the Court entered on September 2, 2021, over the objection of the Plaintiffs.[3] (*United States v. United States Steel Corp.*, 2:18-cv-127 DE 105, 107 (*hereinafter "U.S. Steel"*).)

After the Enforcement Case concluded, U.S. Steel moved to lift the stay in this case so it could file a motion to dismiss. (DE 47.) The Plaintiffs, unsatisfied with the conclusion of the Enforcement Case, also moved to lift the stay so they could file an amended complaint and continue their litigation against U.S. Steel. (DE 50.) The Court lifted the stay and the parties have filed their respective motions which are now fully briefed and ripe for adjudication. Also ripe for decision are three motions for judicial notice, two filed by U.S. Steel (DE 54, 62) and one filed

---

[1] As the Court will refer to numerous documents from the docket of this companion case throughout this order, for the sake of internal consistency the Court will hereinafter refer to the Order entering the Consent Decree by its docket number in that case (DE 105) instead of the Westlaw citation.

[2] This prior action will be referred to as "The Enforcement Case." The original plaintiffs of that action, the United States and the State of Indiana, will be collectively referred to as "the governmental entities" as necessary to distinguish them from the Intervenor-Plaintiffs, the City of Chicago and the Surfrider Foundation.

[3] For the sake of expediency, the Court will refer to this simply as the "Consent Decree" throughout this order.

by the Plaintiffs (DE 60). The Court will address each of these motions, beginning with the motions for judicial notice, then advancing to the motion to dismiss, and concluding with the motion for leave to file an amended complaint.

### B. Motions for Judicial Notice

The Court will first address the three pending motions for judicial notice. The Court grants each of the motions.

The legal standard governing judicial notice is Federal Rule of Evidence 201. This Rule states that a court may take judicial notice of a fact which is not subject to a reasonable dispute because it is generally known within the court's jurisdiction, or it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). This includes documents which are a part of the public record, and reports by administrative bodies. *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 n.1 (7th Cir. 2016) (administrative body reports); *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (public records).

The first motion for judicial notice is brought by U.S. Steel. (DE 54.) The subject of this motion is a demand for stipulated penalties by the governmental entities against U.S. Steel pursuant to the Consent Decree (DE 54-1) and a record of the money being transferred from U.S. Steel paying the penalty (DE 54-2). The demand indicates the specific basis for the penalty was "several unpermitted discharges and associated failures to properly implement the facility's Operation and Maintenance (O&M) Plan, that occurred between September and October 2021." (DE 54-1.) U.S. Steel states this document is admissible as a public record arising out of the

Enforcement Case. This motion is unopposed. Accordingly, the Court takes notice of the documents and the facts contained therein.

The second motion for judicial notice is brought by the Plaintiffs. (DE 60.) The subject of this motion is a pair of reports sent to U.S. Steel from the Indiana Department of Environmental Management ("IDEM") summarizing IDEM's findings from two inspections of the Midwest Plant. The first letter is an "Inspection Summary/Noncompliance Letter", dated June 1, 2022, detailing IDEM's conclusion, that based on a May 2022, inspection, the Plant's wastewater treatment facilities were not being properly maintained as was required by U.S. Steel's Clean Water Act permit. (DE 60-1.) The second letter is an "Inspection Summary Letter" summarizing the observations of two inspections in June 2022. (DE 60-2.) This second letter does not report any violations and does not discuss the issues observed in May. The Plaintiffs request the Court to take judicial notice of the existence of these documents and the fact that IDEM asserts U.S. Steel violated its Clean Water Act permit in May 2022. (DE 60.) U.S. Steel's response indicates it does not oppose the court taking judicial notice of the fact the June 1, 2022, letter exists and that IDEM asserts a permit violation in the letter. (DE 61 ¶4.) In their reply, the Plaintiffs confirm those are the facts they seek the Court to take notice of.[4] (DE 63 at 2.) Accordingly, the Court grants the motion and will consider the facts that the June 1, 2022, letter exists and that IDEM alleges a violation in that letter.

---

[4] The Court notes that despite their substantive agreement on what the Court should take notice of, the parties engage in an adversarial exchange of legal citation seeking to define the Court's authority. (*Compare* DE 61 ¶3 *with* DE 63 at 2–3.) To the extent there is any issue of the Court's authority, it is firmly established the Court may take judicial notice of agency reports. *Fornalik v. Perryman*, 223 F.3d 523, 529 (7th Cir. 2000) ("it is well-established that executive and agency determinations are subject to judicial notice."); *see also Bell*, 841 F.3d at 716 n.1 (administrative body reports); *Thompson*, 161 F.3d at 456 (public records).

The third motion for judicial notice is brought by U.S. Steel. (DE 62.) The subject of this motion is closely tied to the second motion. It is a copy of U.S. Steel's response to the June 1, 2022, IDEM inspection summary which contests IDEM's finding of a violation. (DE 62-1.) The Plaintiffs do not object to the Court taking notice of this document, so long as it is limited to the fact that U.S. Steel contests the violation and the Court does not take notice of U.S. Steel's interpretation of the evidence in the report and their legal conclusions thereof. U.S. Steel's reply seems to agree with this limitation by reaffirming the only intent of taking notice of the document is to show the Court that IDEM's legal conclusion about the May 2022 incident is disputed. Accordingly, the Court grants the motion and will consider the fact that U.S. Steel is legally disputing IDEM's violation finding.

### C. Legal Standard for a Motion to Dismiss

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a

motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

### D. Discussion

U.S. Steel argues that the Plaintiffs' Clean Water Act claims are barred by the doctrine of *res judicata* and that the City of Chicago's state law negligence claim is preempted by the Clean Water Act. The Court will address each claim in turn.

### (1) *The Plaintiffs' Clean Water Act claims are barred by res judicata*

U.S. Steel argues that the Plaintiff's Clean Water Act claims are barred by the legal doctrine of *res judicata* as those claims, stemming from the April 2017 incident, were thoroughly litigated in the Enforcement Case and resolved by the Consent Decree which concluded that case.

The doctrine of *res judicata* holds that once a judgment puts an end to a legal cause of action, that action cannot be re-submitted and relitigated by the parties, or those in privity to the parties, on any ground unless fraud or some other factor invalidates the original judgment. *Nevada v. United States*, 463 U.S. 110, 129–30 (1983). In order for a claim to be precluded under *res judicata*, four elements must be satisfied: (1) The former judgment must have been rendered by a court of competent jurisdiction, (2) the former judgment must have been rendered on the merits, (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies. *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 703 (Ind.

App. 2005); *see also*, *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743, 757 (7th Cir. 2004) ("*FMR I*"). The Seventh Circuit has recognized that *res judicata* applies to a final judgment in the form of a consent decree to bar a citizen suit complaint. *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 556 F.3d 603, 616 (7th Cir. 2009) ("*FMR II*").

The Plaintiffs do not dispute that the first and second elements are satisfied in this case. Instead, they contest whether elements three and four are satisfied. (DE 58 at 13 n.8.) Therefore, the Court concludes that elements one and two are satisfied and will address each disputed element in turn.

### *(a) The Plaintiffs' claims were resolved in the prior action and the third element of res judicata is satisfied.*

The third element is satisfied as the Plaintiffs were parties to the Enforcement Case and presented their claims which were addressed by the Consent Decree. In the alternative, the claims that the governmental entities raised in the Enforcement Case were substantially similar to the citizen suit claims and fully and adequately addressed the Plaintiffs' citizen suit claims.

The third element of *res judicata* is that the matter now in issue was, or could have been, determined in the prior action. *FMR I*, 382 F.3d at 757. This is also known as "identity of causes of action." *Id.* U.S. Steel argues that these two actions are practically identical as they allege the same violations of qualitative and quantitative limits, and many of the same O&M, reporting, monitoring, and stormwater violations. Further, the Plaintiffs, as Intervenor-Plaintiffs in the Enforcement Case, participated in that case and presented their claims during that case. This means their claims were resolved in that case by the entry of the Consent Decree.

Plaintiffs present a single argument as to why their suit is broader and different in scope than the governmental entities claims in the Enforcement Case. Specifically, they argue that they are suing based on U.S. Steel's alleged "continuous" violation of not honoring the O&M provisions of the permit every single day. This is in contrast to the governmental entities' claims, which the Plaintiffs characterize as only challenging O&M violations on the individual days when the O&M violations caused other violations.

The Court finds this argument unpersuasive for two reasons. First, the Plaintiffs themselves previously raised these claims in the Enforcement Case. Second, in the alternative, the Plaintiffs' claims are sufficiently similar to the governmental entities' claims to qualify for *res judicata*.

The Court will first discuss how Plaintiffs' claims were raised in the Enforcement Case. As U.S. Steel notes, the Plaintiffs were Intervenor-Plaintiffs in the Enforcement Case. As Intervenor-Plaintiffs they had the opportunity to present arguments and appeal the final judgment if they found the conclusion unsatisfactory. *United States v. Metro. Water Rec. Dist. of Greater Chi.*, 792 F.3d 821, 825 (7th Cir. 2015) ("*hereinafter "MWRD"*) (rights of intervenor plaintiffs include objecting to proposed settlements and appealing from the final judgment). In the Enforcement Case the Plaintiffs filed Intervenor-Complaints and presented arguments against the proposed Consent Decree, but ultimately chose not to appeal. The Court concludes the Plaintiffs did raise their "continuous violation" argument in their Intervenor-Complaints, albeit with slightly different phrasing than they are using now. Consequently, the claim was addressed in that case, was resolved by the entry of the consent decree, and is barred from restarting litigation in this case.

The Court reaches this conclusion based on the text of the Intervenor-Complaints. The third claim for relief in Surfrider's Intervenor-Complaint is "failure to maintain equipment in violation of the CWA." (*U.S. Steel*, 2:18-cv-127, DE 85 at 30.) As part of this claim Surfrider states "As described above, U.S. Steel failed to maintain properly the Midwest Plant, which resulted in violations of other permit limitations or conditions. *See* ¶¶ 114–122." (*U.S. Steel*, 2:18-cv-127, DE 85 ¶ 144.) A plain reading of this language suggests it is alleging general maintenance failures, which included failures that caused other violations. Therefore, it would seem Surfrider already raised the same continuous violation argument in the Enforcement Case, and it was addressed by the resolution of that case, despite their claims to the contrary now.

Paragraph 114, in the fact section, of Surfrider's complaint further supports this conclusion. That paragraph reads: "Based on publicly available data, U.S. Steel failed to meet maintenance obligations required by the permit. In numerous instances, those operations and maintenance violations were associated with U.S. Steel violating other quantitative or narrative permit conditions." (*Id.* ¶ 114.) Again, this seems to be an allegation of general O&M failures including, but not limited to, specific incidents which caused other permit violations. The City of Chicago's Intervenor-Complaint contains similar language. (*Id.* at DE 86 ¶¶ 135 (alleging maintenance failures caused other permit violations), 104 (factual paragraph alleging general maintenance failures which caused other permit violations in "multiple instances").)

The Court concludes this language in the Intervenor-Complaints reflects a claim which is substantively the same as the one which the Plaintiffs are now presenting to the Court and arguing was unresolved in the Enforcement Case. As this claim has actually been addressed in the Enforcement Case and resolved by the Consent Decree, as discussed below, the Court will

not grant the Plaintiffs a gratuitous second bite at the apple by letting them restart litigation in this case.

Second, and in the alternative, even if the Plaintiff's precise claims regarding "continuous violations" were not raised in the Enforcement Case they are substantially similar to the claims litigated in the Enforcement Case. This would also be sufficient to satisfy the third element of *res judicata*.

The Court begins by noting that it is unclear whether there is a meaningful distinction between the Plaintiffs' "continuous violation" claims and the claims which were previously litigated in the Enforcement Case. The governmental entities' suit targeted, among other things, U.S. Steels' deficient O&M practices which lead to pollutant discharges in violation of the permit. (*U.S. Steel*, 2:18-cv-127, DE 1 ¶97.) As previously mentioned, Plaintiffs argue that the Enforcement Case only intended to target the deficient O&M practices which occurred on the specific days that lead to violations. Thus, the Plaintiffs case is distinct because it targets the violations which occurred *every day* and not just the days which lead to a violation. In other words, Plaintiffs seem to be claiming they are the only parties litigating against deficient U.S. Steel practices which occurred Monday through Friday and that the governmental entities only targeted the deficient practices which occurred on the Wednesday before a discharge.

This characterization, however, is undercut by the language of the governmental entities' complaint in the Enforcement Case. The governmental entities' complaint, much like the Plaintiffs' Intervenor-Complaints, includes references to U.S. Steel's general failure to have comprehensive maintenance and preventative maintenance plans. *Id.* at ¶ 63. Therefore, it would seem the Enforcement Case was targeting the same violations as the Plaintiffs' citizen suit.

Further, it seems a moot point as to whether a party was suing over a specific O&M violation or a broader pattern of O&M violations. Plaintiffs do not explain how such distinctions would result in a meaningfully different legal claim since both types of claims are resolved by the terms of the Consent Decree. The Consent Decree's requirement that U.S. Steel adopt a comprehensive O&M plan and alter their deficient practices resolves both types of claims as it changes how U.S. Steel performs its O&M duties every day. (*See U.S. Steel*, 2:18-cv-127, DE 48-1 at 13–15.) It is therefore difficult to see a substantive distinction between continuous and intermittent O&M violation theories when the relief to both changes to U.S. Steel's daily O&M practices.

Even assuming the Plaintiffs have articulated a meaningful distinction between their O&M claims and the governmental entities' claims, the claims are similar enough that they are analogous for *res judicata* purposes. This is because government action does not need to be identical to the citizen suit action in order to be analogous for *res judicata* purposes. *Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 74 (1st Cir. 2021). Rather, it is sufficiently analogous if the charged conduct is "within the ambit of its causes of action." *Id.* The Enforcement Case and subsequent Consent Decree apply broadly to the Midwest Plant's O&M practices. (*U.S. Steel*, 2:18-cv-127, DE 48-1 at 13–15 (Consent Decree provisions requiring creation and implementation of a comprehensive O&M plan).)

Further, the Court concludes that the Consent Decree's broad scope of remediating the Midwest Plant's deficient O&M practices "swallows up" whatever distinct claims the Plaintiffs might have stemming from alleged "continuous violations" and thus the third element of *res judicata* is satisfied. *See FMR I*, 382 F.3d at 758 (noting how the broad remedial terms of the stipulation (a consent decree equivalent) resulted in identity of the causes of action); *see also*

*United States v. Metro. St. Louis Sewer Dist. (MSD)*, 952 F.2d 1040, 1044–45 (8th Cir. 1992) (noting how the entry of a consent decree broadly precluded the claims in an Intervenor's separate citizen suit complaint).

The Court notes that the Plaintiffs also argue that they are seeking relief broader than the relief contained in the Consent Decree, and this helps to establish that their underlying claims are distinct. However, this argument is reliant on the Court accepting Plaintiff's narrow characterization of the governmental entities' claims. As previously stated, the Court does not agree with that characterization and therefore this argument is not persuasive. To the extent the Plaintiffs attack the sufficiency of the Consent Decree, the Court has previously spoken at length on why it is sufficient and will not belabor the point by repeating that analysis here. *(See U.S. Steel*, 2:18-cv-127 DE 105 (Court's order entering the Consent Decree which speaks at length about the sufficiency of the Decree to achieve its objectives).)

The Court concludes that the third element of *res judicata* is satisfied as the Plaintiffs previously raised this claim in the prior action, and in the alternative, because it is substantially similar to the claims raised in the Enforcement Case.

*(b) The Plaintiffs were parties to the previous lawsuit which satisfies the fourth element of res judicata, and in the alternative there is privity between the Plaintiffs and the governmental entities*

The fourth element is satisfied as the Plaintiffs were parties to the prior action and, in the alternative, there is privity based on the governmental entities' diligent prosecution of the Plaintiffs' legal interests.

The fourth element of *res judicata* is that the controversy adjudicated in the former action must have been between the parties to the present suit or their privies. *FMR I*, 382 F.3d at 757. U.S. Steel argues this element is satisfied for two reasons. First, because the Plaintiffs were parties to the prior suit who extensively participated in the litigation. Second, even if the Plaintiffs hadn't been intervening parties, they would have been in privity with the governmental entities in the Enforcement Case as the governmental entities had authority to represent the Plaintiff's interests and did so through their diligent prosecution. The Plaintiffs extensively discuss why they believe the governmental entities failed to diligently prosecute the Enforcement Case but are silent regarding the fact they were parties to the prior suit. The Court agrees with U.S. Steel and concludes the fourth element is satisfied.

### (i) The Plaintiffs were parties to the prior litigation

It is undisputed that both the Surfrider Foundation and City of Chicago joined the Enforcement Case as Intervenor-Plaintiffs and were substantially involved in the litigation of that case. (*See U.S. Steel.*, 2:18-cv-127, DE 85, 86, 90.) The Plaintiffs being parties to that case means the fourth element of *res judicata* is satisfied and there is no need for the Court to conduct a diligent prosecution analysis, although the Court will do so as an alternative holding. As previously mentioned, by being Intervenor-Plaintiffs to that case the Plaintiffs were fully capable of advocating for their own interests by objecting to a proposed settlement, as the record indicates they did. *MWRD*, 792 F.3d at 825. Further, the Plaintiffs could have filed an appeal of the final judgment in that case, but they opted not to. *Id.* Therefore, the fourth element of *res judicata* is fully satisfied on this basis alone.

      *(ii) In the alternative, the Plaintiffs would be in privity with the governmental entities even if they had not joined the Enforcement Case*

In the alternative, the fourth element of *res judicata* would still be satisfied by the Plaintiffs being in privity with the governmental entities under the standards laid out in the Seventh Circuit's *Friends of the Milwaukee River* case.

A person not party to a previous action can be in privity with an "official or agency invested by law with authority to represent the person's interests." *FMR I*, 382 F.3d at 758 (citing Rest. (Second) of Judgments § 41(1)(d).) Therefore, final judgments in agency enforcement actions will be a *res judicata* or collateral estoppel bar to citizen suits, even if the citizen suit was filed prior to the agency enforcement suit. *Id.* The key inquiry in determining whether privity exists is determining whether the government's subsequently filed action was diligently prosecuted. *Id.* at 759. In the context of the Clean Water Act, the Seventh Circuit has indicated that a diligent prosecution analysis should determine whether the government settlement is "capable of requiring compliance with the Act and is in good faith calculated to do so." *FMR II*, 556 F.3d at 606 (citing *FMR I*, 556 F.3d at 760). Further, there is a presumption of government diligence and neither "perfect foresight" nor "perfect success" are required to establish diligent prosecution. *Id.*

The Plaintiffs contest whether the governmental entities diligently prosecuted the Enforcement Case against U.S. Steel. Specifically, Plaintiffs argue that the Consent Decree which resolved that case is not capable of bringing a permanent end to U.S. Steel's violations and bringing U.S. Steel into compliance with the Clean Water Act. The Plaintiffs argue this is evidenced by the governmental entities words and actions in implementing the Consent Decree,

the content and implementation of the Agreed Order between US Steel and IDEM in May 2021, and the facts relevant to the post-entry violations in 2021 and 2022.

Prior to discussing the merits of this claim, the Court must first assess whether it is proper to consider post-entry facts in evaluating the Consent Decree. The Seventh Circuit held in *Friends of the Milwaukee River II* that whether to consider post-entry evidence, and what weight to assign such evidence, is vested in the discretion of the district court. *Id.* at 612. For the reasons previously stated in Section B of this order, the Court finds the post-entry evidence offered by the parties to be admissible through judicial notice.

With that being said, the Court cannot conclude these post-entry facts deserve meaningful weight or are sufficient to overcome the presumption of diligent prosecution in this case. The cases which previously considered post-entry evidence with a consent decree or settlement had evidence spanning multiple years, ranging from "only a few years" in the *Lewis* case cited by Plaintiffs to almost 20 or 30 years in the *FMR* cases. *Lewis*, 2019 WL 4750313, *10 (N.D. Ill. Sept. 30, 2019) (finding a lack of privity despite the consent decree only being in place for a few years and contrasting that with the "decades that had passed" in *FMR*).

In contrast, the Consent Decree in this case has been operative for less than a year. As noted in this Court's order implementing the Consent Decree, the Decree was not designed to be an instant cure for the issues at the Midwest Plant. (*U.S. Steel*, 2:18-cv-127 DE 105 at 30.) Rather it was designed to be an "iterative process" of improvement and remediation. *Id.* Thus it is natural to expect some violations might occur soon after the implementation of the Consent Decree while the iterative process was just beginning and not take those violations as weighty evidence that the Consent Decree was insufficient. *See FMR II*, 556 F.3d at 612 (noting that when a consent decree's measures will take some time to implement, some post entry violations

are to be expected). This frame of reference is essential to the Court's consideration of the September and October 2021 violations. As previously mentioned, the Consent Decree was entered on September 2, 2021, which means these violations occurred within two months of the Consent Decree entering into force and in the infancy of the iterative process. Further, the demand for stipulated penalties by the governmental entities in response to these violations, while not curing the violations, indicates the Decree's enforcement provisions are being utilized to hold U.S. Steel accountable and deter future violations.

This timeframe issue applies with equal force to the May 2022 violation, as it occurred less than six months after the entry of the Consent Decree. The May 2022 violation is also fundamentally dissimilar from the prior violations as it did not involve discharge of waste outside the Midwest Plant. Rather this violation involved perceived deficiencies in the operation of the Midwest Plant's wastewater treatment system. The Court recognizes that U.S. Steel also disputes whether the May 2022 violation is merited or was an incorrect categorization of normal plant operations. But this fact is ultimately not dispositive. Even if the violation was merited, the violation's close proximity in time to the implementation of the Consent Decree and non-discharge nature of the violation means the Court would not find it particularly probative of whether the Consent Decree is effective. Therefore, while the Court would consider these violations in a diligent prosecution analysis, it would afford them minimal to no weight given they occurred in the early stages of the iterative process created by the Consent Decree.

The Court now turns to the Plaintiffs' substantive arguments for lack of diligence. Plaintiff's first argument is that the Consent Decree was never capable of bringing a "complete end to Defendant's violations." (DE 58 at 15.) To the extent this is an argument about the structure and sufficiency of the consent decree, Court has already issued a decision on why the

Consent Decree is technically adequate to accomplish its goal of bringing U.S. Steel into compliance with the Clean Water Act and will not belabor the point by restating that rationale here. (*See U.S. Steel*, 2:18-cv-127 DE 105 (Court's order entering the Consent Decree which speaks at length about the sufficiency of the Decree to achieve its objectives).)

Further, the Plaintiffs' argument alleging a lack of sufficient enforcement mechanisms in the Consent Decree, as allegedly evidenced by the failure of the governmental entities to take enforcement action after the September and October 2021 violations is without merit. Plaintiffs contend that the governmental entities only response to those violations was a December 2021 letter to U.S. Steel seeking an explanation without taking enforcement action. This contention is fatally undercut by the governmental entities' subsequent letter, on February 25, 2022, demanding U.S. Steel pay stipulated penalties due to the September and October 2021 violations of the Consent Decree. (DE 54-1.)

Plaintiffs also seem to argue that the Court's previous analysis of the Consent Decree did not consider the requirements the Seventh Circuit set forth in *Friends of the Milwaukee River I*, namely whether it brings an "end to violations."(DE 58 at 18–19.) The Plaintiffs also seem to argue, that even if the Court did consider *FMR I's* standard in deciding to enter the Consent Decree, that analysis cannot stand in light of the post-entry facts which provide new clarity on the shortcomings of the Consent Decree. (*Id.*) Phrased another way, the Court's analysis of the Consent Decree and the *res judicata* analysis cannot "merge" due to the post-entry facts. (*Id.* at 19 (Citing *MWRD*, 792 F.3d at 824–25).) The Court disagrees. For the reasons discussed elsewhere in this order, the Court finds that the post-entry facts merit minimal or no weight and therefore do not impede a merger of the Consent Decree and *res judicata* analysis.

To the extent the Plaintiffs are arguing that the Court did not previously consider the *FMR I* standard in its decision to implement the Consent Decree they are mistaken. The "technical adequacy" section of the Court's opinion approving the Consent Decree specifically cites to *FMR I* as the Court explains the Consent Decree would address the Plant's history of violations and is technically adequate to bring about compliance with the Clean Water Act. (*U.S. Steel*, 2:18-cv-127 DE 105 at 32 (Citing *MWRD*, 792 F.3d at 825 (citing *FMR I*, 382 at 759)).) The Plaintiffs' efforts to draw a legal distinction between the Court's wording of "bring[ing] about compliance" (*Id.*), and the *FMR I* court's wording of bringing "an end" to violations is without merit (DE 58 at 19). The Court said the Consent Decree would bring about compliance and cited to *FMR I* in making that statement. In doing so, the Court clearly meant compliance in the sense that *FMR I* used that term which means an end to the violations. 432 F.3d at 764 ("Compliance means an *end* to violations") (emphasis added).[5] Given the Court previously conducted the requisite analysis, and the post-entry facts do not upset those conclusions, there is no occasion for a reexamination of whether the Consent Decree is sufficient to achieve its goals.

Plaintiffs' second argument is that the content and implementation of the Agreed Order between U.S. Steel and IDEM shows the, later adopted, Consent Decree is not sufficient to bring the Midwest Plant into compliance. The Agreed Order was entered in May 2021, which is several months prior to the Consent Decree. The Plaintiffs attached a copy of this Order to their response brief as Exhibit B and asked the Court to take judicial notice of the Order and its

---

[5] Plaintiffs also requested that if the Court found the Consent Decree meets the *FMR I* standard, that they be declared prevailing parties entitled to fee recovery per 33 U.S.C. §1365(d). (DE 58 at 19 n.13.) The Court denies this request as the Plaintiffs, in having a motion to dismiss granted against them, cannot be considered prevailing parties in this case. The Court notes that none of the case law cited by Plaintiffs (DE 50 at 18) remotely suggests they would be entitled to fees in this case, based on the alleged success of obtaining a Consent Decree in a different case where they are Intervenor-Plaintiffs. The Court does not take a position on whether the Plaintiffs would be considered prevailing parties as Intervenor-Plaintiffs in the Enforcement Case.

attached documents (DE 58 at 7 n.4). U.S. Steel did not directly address the issue of judicial notice but attached its own copies of the documents as part of its reply brief (DE 59-1, 59-2). As these documents are public records maintained by a state agency in this jurisdiction, the Court takes judicial notice of the documents. Fed. R. Evid. 201.

The Court now turns to the substantive arguments involving these documents. Plaintiffs point to a substantive difference between the Agreed Order and the Consent Decree, that the Agreed Order has a higher civil penalty, as evidence that the Consent Decree is technically inadequate to achieve its purpose. This argument is not persuasive. The Court previously considered the issue of whether the Consent Decree's civil penalty was sufficient and ultimately concluded it was. (*U.S. Steel*, 2:18-cv-127, DE 105 at 18–24.) The Court finds no basis to reconsider that conclusion now. The Court finds no other reason to reconsider the Consent Decree's adequacy based on a pre-entry document. Therefore, there is no basis to conclude the Consent Decree reflects a lack of diligent prosecution.

Plaintiff's third and final argument is that the post entry facts regarding subsequent violations show the case was not diligently prosecuted as they establish the Consent Decree has failed its intended purpose. As previously stated, however, the Court assigns minimal to zero weight to these post-entry violations as they are too early in the Consent Decree's iterative process to meaningfully assess whether the Decree has failed. After considering these violations, the Court concludes that the Plaintiffs have not established the Consent Decree has failed its purpose. The occurrence of two discharge related violations in the infancy of the iterative process created by the Consent Decree, and one non-discharge violation several months later, with no subsequent actual or alleged violations, is not a sufficient basis of evidence for the Court

to decide that the Consent Decree has already failed and was the product of a less than diligent prosecution.

Ultimately, the Court concludes that Plaintiffs have not rebutted the presumption of diligent prosecution and therefore privity would exist between the Plaintiffs and the governmental entities which would satisfy the fourth element of *res judicata*. Again, this is only an alternative holding for the fourth element, as the element is independently satisfied by the fact the Plaintiffs were parties to the prior lawsuit.

The Court concludes that all four elements of *res judicata* are satisfied. Accordingly, the Court grants U.S. Steel's motion to dismiss the Plaintiffs' claims under the Clean Water Act.

**(2)** ***The City of Chicago's negligence claim is not preempted by the Clean Water Act, but the Court declines to exercise supplemental jurisdiction***

The remaining issue for the Court to decide is whether the City of Chicago's state law negligence claim is preempted by the Clean Water Act. While the City's claim is not preempted the Court will decline to exercise supplemental jurisdiction.

U.S. Steel argues that the City's negligence claim under Indiana state law is pre-empted by the Clean Water Act, and thus it must be dismissed. In the alternative, U.S. Steel asks the Court to decline to exercise supplemental jurisdiction over any state law claims remaining after the Court grants the motion to dismiss the federal law claims. The City argues in response that U.S. Steel has misapprehended the law and that the Clean Water Act does not bar state law claims against polluters using the law of the State in which the point source is located.

The Court concludes that the City has the more accurate restatement of the law, but it will decline to exercise supplemental jurisdiction. The case on which U.S. Steel primarily rests its

preemption argument, *International Paper Company v. Ouellettee*, explicitly holds that the Clean Water Act does not bar plaintiffs from bringing state law claims pursuant to the law of the state in which the pollution source is located. 479 U.S. 481, 497 (1987). The *Ouellettee* Court did find that the state law claims in that case were barred. However, the Court only reached that conclusion because the state law claims in that case were brought under the laws of a different state (Vermont) from where the pollution source was located (New York). *Id.* at 497–99. The Court reaffirmed this understanding of the Clean Water Act in *Arkansas v. Oklahoma*. 503 U.S. 91, 100 (1992).[6] As the City is raising its claims under Indiana state law and the pollution source site is in Indiana, *Ouellettee* does not bar the City's claims.

Nonetheless, the Court will decline to exercise supplemental jurisdiction over the City's state law negligence claim. Federal district courts may decline to exercise supplemental jurisdiction when, among other things, the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. §1367(c)(3). While this decision is discretionary, there is a presumption that courts will relinquish jurisdiction over supplemental state law claims after dismissing all federal claims in a suit. *RWJ Mgmt. Co., Inc. v. BP Prod. N. Am., Inc.*, 672 F.3d 476, 479–80 (7th Cir. 2012). The Seventh Circuit has noted three circumstances which may rebut this presumption:

> (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

---

[6] U.S. Steel's citation to this case for the contrary proposition is misplaced and is explained by their citation to page 92, which is the non-precedential summary prepared by the Reporter of Decisions.

*Id.* at 480 (quoting *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514–15 (7th Cir. 2009).

The Court concludes that none of these three circumstances apply. First, there is no evidence in the record to suggest the statute of limitations has run and the City does not make any argument that it has. Second, while substantial judicial resources have been committed to resolving the Clean Water Act claims, virtually no resources have been committed to the negligence claim, so sending that claim to another court would not cause a duplication of effort. Third, because the negligence claim is largely undeveloped, it is not "absolutely clear" how it could be decided. Therefore, the Court concludes it is most appropriate to decline to exercise supplemental jurisdiction over the City's state law claims.

Accordingly, the City's state law negligence claim will be dismissed without prejudice. The City will have 30 days to refile its negligence claims if it sees fit to do so. *Jinks v. Richland Cty.*, 538 U.S. 456, 459 (2003).

### (3) *The motion for leave to file an amended complaint will be dismissed as moot*

As the Court is granting U.S. Steel's motion to dismiss the federal claims in this case and declining to exercise supplemental jurisdiction over the remaining state law claim this case will be closed. Accordingly, the Plaintiffs' motion for leave to file an amended complaint is denied as moot.[7]

---

[7] *See Data Res. and Handling, Inc. v. Vongphachanh*, 278 F.Supp.3d 1066, 1072 (N.D. Ind. 2017) (noting that the proposed amended complaint would be futile if the court lacked jurisdiction over the claims); *Carter v. Ind. State Fair Comm'n*, 2013 WL 786845 (S.D. Ind. Mar. 1, 2013) (collecting cases noting that a proposed amended complaint is futile when the court lacks subject matter jurisdiction).

**E. Conclusion**

The motions for judicial notice are GRANTED (DE 54, 60, 62) to the extent discussed in Section B of this Order. U.S. Steel's motion to dismiss is GRANTED (DE 56) and the Plaintiffs' federal law claims are DISMISSED with prejudice. The City of Chicago's state law claim is DISMISSED without prejudice. The Plaintiffs' motion for leave to file an amended complaint is DENIED as moot (DE 50). The Clerk is directed to CLOSE these consolidated cases.

SO ORDERED.

ENTERED: September 22, 2022

_____/s/ JON E. DEGUILIO_____
Chief Judge
United States District Court